## TERRITORY OF MONTANA, RESPONDENT, *v.* JOSEPH MACKEY, APPELLANT.

APPEAL—*Criminal case*— *When appeal is consummated*—*Filing of transcript.* — A motion was made in the Supreme Court to dismiss an appeal in a criminal case, because the transcript had not been filed within thirty days from the taking of the appeal. The notice of appeal had been served May 14, 1888, and the undertaking executed May 17, 1888. *Held,* that under section 398, division 3, Compiled Statutes, the appeal was consummated on May 17, 1888; but on the authority of *Territory* v. *Flowers,* 2 Mont. 392, holding that the language of section 397,

division 3, Compiled Statutes, in so far as it requires a transcript to be filed within thirty days from the taking of an appeal, is merely directory, the motion must be disallowed. *Held, however*, that the practice of filing transcripts in criminal appeals, on the eve of a meeting of the Supreme Court, or after it is in session, is reprehensible, and should not be followed.

CRIMINAL LAW — *Mines and minerals — Destroying notice on a mine — Evidence — Nonsuit.*—The defendant was indicted under section 1482, division 5, Compiled Statutes, for the destruction of a notice of location on a mining claim. The indictment charged that the defendant "did wilfully and unlawfully obliterate, deface, and destroy a notice of location, placed upon the Oregon Quartz Lode Mining Claim." The only evidence offered as to the valid location of said mining claim by the prosecution was that of a witness, who testified that he was the locator of the said claim, and in starting to run a cross-cut had found quartz and vein matter, and had thereupon put up a notice of location. There was no evidence that the quartz or vein matter contained precious metal. A motion for a nonsuit by the defendant was overruled. *Held*, that under the indictment, it was essential to prove that there was such a mining claim as the "Oregon Quartz Lode," within the definition of such a claim as given in *Smelting Co. v. Kemp,* 104 U. S. 649, namely : "A mining claim is a parcel of land containing precious metal in its soil or rock. A location is the act of appropriating such parcel according to certain rules." Also, to prove that a notice had been placed upon it, which the defendant had wilfully destroyed or defaced ; and that the motion for a nonsuit should have been granted, or which is a better practice in such cases, the jury should have been instructed to return a verdict of not guilty.

SAME — *Malicious prosecution — Discharge of a defendant by the Supreme Court.*— A defendant was indicted, tried, and convicted for destroying a notice of location on a mining claim. The prosecuting witness in his testimony admitted that the claim aforesaid was within another claim, belonging in part to the defendant's wife, and that he had instituted the prosecution in order to compel the defendant either to buy the first aforesaid claim, or to give him stock in a corporation formed for working the latter claim. The Supreme Court held that the prosecution was frivolous and malicious, and directed an entry to be made in its records discharging the defendant.

*Appeal from the Second Judicial District, Deer Lodge County.*

### STATEMENT.

The indictment set forth the offense of the defendant in the following language : "That one Joseph Mackey, late of the county of Deer Lodge, Montana Territory, on or about the fifth day of July, A. D. 1887, at the county of Deer Lodge, and Territory of Montana, did wilfully and unlawfully obliterate, deface, and destroy a notice of location, placed upon the Oregon Quartz Lode Mining Claim by one Steven Severson and James Meyer, lawfully claiming said Oregon Lode Mining Claim under and by virtue of said location notice."

From the testimony contained in the record on appeal, it appeared that two of the witnesses for the prosecution, Steven Severson and James Meyer (who are referred to in the indict-

ment), claimed that a part of a mining claim, known as the
" Young America," was embraced in their mining claim known
as the "Oregon." An open box containing the notice of loca-
tion, claimed to have been destroyed, had been nailed to a post,
set up by Severson, near a prospect hole on the ground in dis-
pute. The defendant, whose wife was one of the owners of the
Young America, on July 5, 1887, while working on said claim,
knocked the box and notice into the hole, in which there was
some water at the time, claiming that the same were in his way.
The only evidence in reference to the location of the Oregon
Lode, introduced by the prosecution, was in that portion of the
testimony of Severson, as follows : —

" I know about the Oregon Lode Claim. I believe it was the
twenty-seventh day of April, 1886, that I located it. I started to
run a cross-cut to strike the vein. I discovered quartz and vein
matter. . . . . I also staked the claim. I also made a record
of that notice [referring to the one set up in the box, as has been
stated]. The record and the one I posted on the claim are just
alike, to the best of my knowledge. After that I represented
on the claim this fall."

Severson also testified : " My claim (the Oregon) was adjoin-
ing the Young America on the east. I don't recollect how long
Mackey has owned that — a year or two. It may have been
located six or seven years. I know it has been located quite
awhile. There has been a great deal of work done upon it.
There might have been six thousand dollars or seven thousand
dollars, more or less. He (Mackey) has not always claimed
that where I found this quartz was inside the Young America
lines. . . . . Half of what I call the Oregon Claim is not
within the Young America Claim, so far as I know. . . . .
Meyer and I own this Oregon Claim together. . . . . I am
acquainted with John Price (a witness for the defense). He
and I were talking together here in Deer Lodge, two or three
days ago, in regard to this matter. . . . . I said I should think
we ought to be able to settle it inside of twenty-four hours,
if they wanted to. I didn't say Mackey, I said the Young
America. . . . . I was speaking of this criminal prosecution.
I did not want any of the Young America ground. I have
said I would give them my property if they would give me

stock (meaning stock in the Young America Company). This prosecution is not begun against Mackey for the purpose of making him settle with me. . . . . I swear positively to that. It was Meyer and I that instituted this prosecution — Meyer and I that made the complaint. We are both interested in and claim this Oregon. We only said they could have settled it by buying our property or giving us stock in the Young America. We have some suits against this Young America, pending in court here on an adverse claim. They have applied for patent and taken in all our ground."

The defendant offered to prove that the Young America was a valid location and that the Oregon was not. The court refused to allow this, and an exception was duly taken. The jury found the defendant guilty, and fixed his punishment at a fine of one dollar. He appealed.

*Robinson & Stapleton,* for Appellant.

The court erred in refusing the motion for a nonsuit. There was no proof by the prosecution that there was any such mining claim as the Oregon Claim. As to what is a mining claim we refer the court to *Smelting Co.* v. *Kemp,* 104 U. S. 649, and *Belk* v. *Meagher,* 104 U. S. 284, in which latter the expression is used in the sense of a location; and to the same effect will be found nearly every case decided by this court. There was no proof of the mineral character of the ground on which the notice was posted, nor that any claim was made to the same by any one, that is, any valid claim.

*W. E. Cullen,* Attorney-General, for Respondent.

This case is brought under the provisions of section 1482 of the fifth division of the Compiled Statutes, which prescribe a penalty for destroying, defacing, or obliterating a notice of a mining claim. There was sufficient evidence to show that the "Oregon" Lode location was a mining claim within the meaning of the law, and the question is not as to the sufficiency of the location in all of its details, but did the defendant destroy or obliterate a notice which this law was designed to protect?

McCONNELL, C. J.—In this case the attorney-general for the Territory "moves the court to dismiss the appeal, . . . . for the reason that the transcript was not filed within thirty days after the taking of said appeal." The transcript was filed July 6, 1888, the notice of appeal was served upon the county attorney and the District Court clerk of Deer Lodge County, the place of trial, on the fourteenth day of May, 1888, and the necessary undertaking on appeal was executed May 17, 1888; hence the appeal was consummated on that day. (Comp. Stats. § 398, p. 477.) It will thus be seen that fifty days elapsed between the time of taking the appeal and the filing of the transcript. Section 397, page 476 of the Compiled Statutes provides that "the appeal must be taken within six months after the judgment is rendered, and the transcript must be filed within thirty days after the appeal is taken." In the case of *Territory* v. *Flowers*, 2 Mont. 392, this court held that the foregoing statute, in so far as it requires the transcript to be filed within thirty days after the appeal has been taken, is merely directory, and not mandatory. We do not feel called upon to disturb it. The motion is therefore disallowed. But we cannot pass from this subject without remarking that the practice of attorneys in filing transcripts in this court just upon the eve of its meeting, or after the term has commenced, is reprehensible, and ought not to be followed except when it is absolutely unavoidable. It gives the attorney-general no opportunity to examine them, and prepare for hearing at that term. Conviction of a misdemeanor, motion for a new trial overruled, and an appeal to this court. The following grounds of error are relied upon for a reversal of this case, to wit: (1) Error for refusing to sustain defendant's motion for a nonsuit, and to discharge the defendant. (2) Error in the refusal to admit certain testimony offered by the defendant. (3) Error in certain instructions given by the court.

The motion for a nonsuit was predicated upon the following grounds, to wit: "That the prosecution failed to prove that there was any such mine ever located as the Oregon Lode Claim; that the same had never been staked off, so that its boundaries could be traced on the ground; that there was no proof of the mineral character of the said Oregon Lode Claim; that there was no

proof of any defacing, obliterating, or destruction of the said notice; and that there was no proof that the said notice was inside of the lines of the said Oregon Lode Claim." The defendant was indicted under section 1482, page 1055 of the Compiled Statutes of Montana. It provides "that any person who shall remove any stake or monument on any mining claim, or who shall obliterate, deface, or destroy any notice placed thereon, shall be deemed guilty of a misdemeanor." The indictment charges that the defendant did "wilfully and unlawfully obliterate, deface, and destroy a notice of location placed upon the Oregon Quartz Lode Mining Claim." Under this indictment it was essential to prove that there was such a mining claim as the "Oregon Quartz Lode"; that a notice of location was placed upon it; and that the defendant did wilfully and unlawfully obliterate, deface, or destroy it. The Supreme Court of the United States, in the case of *Smelting Co.* v. *Kemp,* 104 U. S. 639, thus defines a mining claim, to wit: "A mining claim is a parcel of land containing precious metal in its soil or rock. A location is the act of appropriating such parcel according to certain rules." The witness, Steven Severson, testified that he was the locator of the so-called "Oregon Lode Mining Claim"; that he started to run a cross-cut, and found "quartz and vein matter." Thereupon he put up the location notice. This is the whole of the testimony upon this point. Tested by the foregoing definition of a mining claim, it will be seen that there is no such mining claim as that described in the indictment. There is not a *scintilla* of evidence that there was a particle of precious metal either in the "quartz" or "vein matter." The existence of quartz or vein matter does not of itself constitute a mine, nor warrant the discoverer in locating a mining claim. Such matter must bear one or more of the metals named in the statute before a mine that has been discovered can be located under the law. The motion, then, to enter a nonsuit, and discharge the defendant, should have been sustained, or, what we think is the proper practice in such cases, the jury should have been instructed to return a verdict of not guilty. The evidence satisfies us that there is no merit in this prosecution. The prosecuting witness confesses that his so-called "Oregon Lode" is within the "Young America" Claim, which

was located long before his (and that belongs in part to the wife of the defendant), and that he instituted this prosecution for the purpose of compelling defendant to buy either his claim or to give him stock in the "Young America." Deeming the prosecution frivolous and malicious, we direct that an entry be made here discharging the defendant. From this view of the case it is unnecessary for us to notice the other grounds of error.

*Judgment reversed*

BACH, J., and LIDDELL, J., concur.